**IN THE UNITED STATES COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **GARDERE WYNNE SEWELL LLP,** | § | |
| **STEPHEN DON ELISON and** | § | |
| **ELIZABETH HOWARD CROWELL,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. _____** |
| | § | |
| **THE BANK OF NEW YORK MELLON** | § | |
| **and THE BANK OF NEW YORK** | § | |
| **MELLON TRUST COMPANY, N.A.,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

COME NOW Plaintiffs Gardere Wynne Sewell LLP ("Gardere"), Stephen Don Elison ("Elison") and Elizabeth Howard Crowell ("Crowell") (collectively "Plaintiffs") complaining of Defendant The Bank of New York Mellon ("BNY Mellon") and The Bank of New York Mellon Trust Company, N.A. ("BNYM Trust") (BNY Mellon and BNYM Trust are collectively referred to as "Defendants") and state:

**I.      THE PARTIES**

1.      Plaintiff Gardere is a limited liability partnership created, organized and existing under the laws of the state of Texas, with a principal place of business located at 1000 Louisiana Street, Suite 3400, Houston, Texas.

2.      Plaintiff Stephen Don Elison is an individual and a citizen of the State of Texas.

3.      Plaintiff Elizabeth Howard Crowell is an individual and a citizen of the State of Texas.

4.      Defendant BNY Mellon is a banking corporation organized and existing under the laws of the State of New York. BNY Mellon has its principal place of business in the state of

New York located at One Wall Street, New York, New York 10286, and may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service of process.  Service of process on the Secretary of State is proper in this case because BNY Mellon engaged in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from BNY Mellon's business in Texas. TEX. CIV. PRAC. & REM. CODE § 17.044(b).

5.      Defendant BNYM Trust is a national banking association whose charter was issued in Washington, D.C. with its principal place of business in Los Angeles, California. BNYM Trust maintains offices in Texas and can be served by serving its registered agent in Texas, CT Corporation System at 350 North St. Paul St., Dallas, Texas 75201.

## II.      JURISDICTION AND VENUE

6.      The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district. Specifically, the legal services and discussions giving rise to this claim were performed in this district.

## III.      SUMMARY OF CASE

8.      Plaintiffs acted as legal counsel for Defendants regarding certain matters that arose in connection with an indenture for a collateralized debt obligation ("CDO").  Subsequent to the transaction upon which Plaintiffs provided legal advice, Defendant BNY Mellon was sued in two separate lawsuits (the "Subsequent Litigation").  Defendant BNY Mellon now claims that Plaintiffs are responsible to BNY Mellon for all alleged damages, costs, and losses incurred in the Subsequent Litigation.

9.      Plaintiffs' obligations to Defendants regarding legal advice were strictly limited by the scope of the engagement, the engagement agreement, and Defendants' Outside Counsel Policy to which all parties agreed.   Under the Outside Counsel Policy, Defendants are responsible for all substantive and strategic legal decisions.  Gardere contends that Defendants breached their agreements with Gardere.

10.      Plaintiffs contend they have no liability to Defendant BNY Mellon or BNYM Trust, including any duty or liability to indemnify BNY Mellon.  Plaintiffs seek resolution of these issues and request that the Court declare the legal relations and obligations of the parties. An actual, substantial, immediate and real controversy exists between the parties regarding their legal rights, obligations and duties under their agreement.   Absent the Court's immediate declaration of the legal rights, obligations and duties, Plaintiffs will continue to suffer injury.

## IV.      FACTUAL BACKGROUND

### A.      The PreTSL XX and the Bimini TruPS

11.      Preferred Term Securities XX, Ltd. (the "Issuer"), its Co-Issuer, Preferred Term Securities, Inc., (the "Co-Issuer"), and BNY Mellon (as Indenture Trustee) entered into an indenture dated December 15, 2005 (the "Indenture"). The Issuer and Co-Issuer were special purpose vehicles created to issue notes (the "Notes") commonly known as collateralized debt obligations, or CDOs, for sale to investors (the "Noteholders").  The Issuer and Co-Issuer issued the Notes in a transaction known as "PreTSL XX."

12.      The proceeds from the sale of the Notes were used by the Issuer to purchase a diversified set of securities (the "Collateral") issued by various entities, which securities were held in trust in a collateral pool (the "Collateral Pool") for the benefit of the Noteholders. Interest due to the Noteholders on the Notes was paid from returns generated by the securities in the Collateral Pool.

13.     PreTSL XX was a "static" CDO, meaning that during the life of the CDO no additional collateral could be sold, purchased or substituted for the original Collateral in the Collateral Pool, except in certain circumstances.  A portion of the Collateral in the Collateral Pool consisted of trust preferred securities (the "TruPS") issued by Bimini Capital Trust II through a publicly traded real estate investment trust known as Bimini Capital Management, Inc. ("Bimini").

14.     BNY Mellon was the Indenture Trustee for the PreTSL XX pursuant to the Indenture.  As Indenture Trustee, BNY Mellon's duties and responsibilities included, among other things, holding the Collateral; collecting payments from the collateral securities as described in Section 8.1 of the Indenture; and distributing payments to Noteholders as required by Section 8.4 of the Indenture.  Further, pursuant to Section 5.16(b) of the Indenture, BNY Mellon was authorized to "dispose [of] a defaulted Collateral Security" at the direction of the Requisite Noteholders, as that term is defined in the Indenture.

15.     In 2009, Bimini approached BNY Mellon as Indenture Trustee, and sought to repurchase the TruPS from the Collateral Pool at a discount.  Bimini proposed a $10.8 million cash tender offer dated July 1, 2009, as amended, to purchase all of the outstanding TruPS from the Issuer (the "Tender Offer").

**B.     BNY Mellon and BNYM Trust Retain Gardere**

16.     In or about May 2009, BNY Mellon and BNYM Trust engaged Gardere in Houston, Texas, regarding Bimini's proposal to repurchase the TruPS and BNY Mellon's rights and obligations pursuant to the Indenture.  Defendants' engagement of Gardere was subject to the terms of Defendants' June 3, 2008, written engagement letter agreement with Gardere, which expressly incorporated its September 21, 2006 "Outside Counsel Policy."

17.     Plaintiffs Elison and Crowell, both of whom were and are located in Houston, were principally responsible for the assignment on behalf of Gardere.  Defendants required Plaintiffs to adhere to the terms of their Outside Counsel Policy.  Pursuant to the Outside Counsel Policy, Defendants' Lead Inside Counsel, Suewan Johnson, located in Houston, Texas, was responsible for Defendants' substantive and strategic legal decisions.

**C.     Terms of the Indenture Pertaining to the Sale of Collateral in the Collateral Pool**

18.     The Indenture, at Section 5.16(b), permitted BNY Mellon, as Indenture Trustee, to authorize the sale (or repurchase) of Collateral Securities held in the Collateral Pool if the securities at issue were "defaulted Collateral Securities" and more than 66.6% of the holders of certain senior tranches of the CDO (the "Requisite Noteholders") agreed to the transaction.

19.     On or about October 21, 2009 at the request of BNY Mellon, Bimini's counsel, Hunton & Williams, provided an opinion letter to BNY Mellon as Indenture Trustee (the "H&W Opinion Letter").  The H&W Opinion Letter concluded that BNY Mellon, as Indenture Trustee and pursuant to the Indenture, was authorized to effectuate Bimini's cash Tender Offer to repurchase the TruPS from the Collateral Pool if so directed by the Requisite Noteholders.

20.     In the Subsequent Litigation, BNY Mellon has judicially admitted that it relied upon the H&W Opinion Letter.  BNY Mellon sent the Tender Offer and Request for Direction, conveying the terms of the Tender Offer, to the Requisite Noteholders seeking the direction of the Requisite Noteholders to accept the Tender Offer of the purchase of the TruPS by Bimini.  In reliance on the H&W Opinion Letter, BNY Mellon approved the results of the Tender Offer and Request for Direction, pursuant to which over 66.6% of the senior Noteholders consented to the consummation of the Tender Offer. Relying upon the H&W Opinion Letter, BNY Mellon allowed the repurchase of the TruPS by Bimini pursuant to Section 5.16(b) of the Indenture.

21.     On or about October 21, 2009, after receiving the H&W Opinion Letter, BNY Mellon consummated the Tender Offer by removing the TruPS from the Collateral Pool and permitting Bimini to purchase the TruPS.

22.     Gardere was paid less than $45,000.00 for the representation.

**1)      Federal Court Action – *Howe v. The Bank of New York Mellon and Bimini Capital, Ltd.***

23.     On December 23, 2009, R. Davis Howe, a Noteholder, commenced an action in the United States District Court for the Southern District of New York entitled *R. Davis Howe v. The Bank of New York Mellon, et al.*, Case No. 09 Civ. 10470, naming BNY Mellon as a defendant along with Bimini and related entities (the "*Howe* Action").  In the *Howe* Action, Howe asserted claims against BNY Mellon directly and sought derivative claims in the name of BNY Mellon against Bimini, alleging that BNY Mellon, among other things, breached the Indenture by permitting the repurchase of the TruPS when the TruPS had not defaulted, and also sought derivative claims in the name of the Issuer.  BNY Mellon filed a motion to dismiss Howe's claims, and the parties filed cross-motions for summary judgment.  Ultimately, the *Howe* Action was settled and dismissed with prejudice on the agreement of the parties.

24.     In the litigation, BNY Mellon admits that it relied in good faith upon the H&W Opinion Letter.  Despite specific provisions in the Indenture that fully protect the Trustee from liability for actions taken in good faith in reliance on an opinion of counsel, and despite the fact that Defendants are contractually responsible for all substantive and strategic legal decision, BNY Mellon nevertheless asserts that Plaintiffs are liable to BNY Mellon for all attorneys' fees and costs incurred by BNY Mellon in the Howe Action. BNY claims these fees and costs are $1,500,000.

2)  **State Court Action – *Hildene Capital Management, LLC, et al. v. The Bank of New York Mellon and Bimini Capital, Ltd., et al.***

25.     On July 16, 2010, Hildene Capital Management, LLC and Hildene Opportunities Master Fund, Ltd. *(*collectively "Hildene"), who were among a minority of Noteholders who did not vote in favor of the Tender Offer, commenced an action against BNY Mellon, Bimini, and entities related to Bimini in New York state court titled *Hildene Capital Management, LLC and Hildene Opportunities Master Fund Ltd. v. The Bank of New York Mellon and Bimini Capital Management, Inc.*; Index No. 650980/2010, in the Supreme Court of the State of New York, New York County (the "*Hildene* Action").

26.     The complaint originally filed in the *Hildene* Action is essentially identical to the complaint filed in the *Howe* Action.  Among other things, it alleges causes of action against BNY Mellon for breach of the Indenture by permitting the repurchase of the TruPS, as well as derivative causes of action which are substantively the same as those derivative claims which were asserted, and subsequently dismissed, in the *Howe* Action.

27.     The *Hildene* Action was stayed by the Supreme Court of the State of New York, County of New York pending the resolution of the *Howe* Action.  Following resolution of the *Howe* Action, on May 23, 2011, BNY Mellon and the other defendants in the *Hildene* Action moved to dismiss Hildene's derivative claims.  On April 2, 2013, the Court allowed Preferred Term Securities XX, Ltd., the Issuer, to intervene as Plaintiff.  The *Hildene* Action continues to proceed and is no longer stayed.

28.     In the litigation, BNY Mellon admits that it relied upon the H&W Opinion Letter. Despite specific provisions in the Indenture that fully protect the Trustee from liability for actions taken in good faith in reliance on an opinion of counsel, and despite the fact that Defendants are contractually responsible for all substantive and strategic legal decisions, BNY

Mellon nevertheless asserts that Plaintiffs are liable to BNY Mellon for all damages, attorneys' fees, and costs incurred by BNY Mellon in the *Hildene* Action.

**D.      Plaintiffs are Not Liable**

29.     Plaintiffs are not liable to Defendants for any losses or claims arising out of the legal services provided in connection with the PreTSL XX because, among other things, Plaintiffs at all times acted in accordance with their legal and professional duties, the scope of their engagement agreement, and Defendants' Outside Counsel Policy, including direction from Defendants' Lead Inside Counsel.

30.     Moreover, Plaintiffs are not liable to Defendants because Defendants are fully protected under applicable language of the Indenture.

**V.      <u>CAUSES OF ACTION</u>**

**A.      Count 1:  Gardere's Breach of Contract Claim Against Defendants**

31.     As set forth, above Defendants have repudiated and breached their contractual obligations to Gardere, including but not limited to those under the engagement agreement and the Outside Counsel Policy.  As a result of Defendants' breach, Gardere has suffered actual damages.

**B.      Count 2:  Request for Declaratory Relief**

32.     As set forth, above there exists an actual controversy related to the rights, duties, and obligations of the Parties as set forth herein. Plaintiffs will suffer injury absent a declaration of the Parties rights, duties, and obligations.

33.     BNY Mellon asserts it is entitled to payment, contribution, and indemnification from Plaintiffs for its alleged losses incurred in the *Howe* and *Hildene* Actions.  Pursuant to 28 U.S.C. § 2201, Plaintiffs request a declaration of their rights, obligations and legal relations vis-à-vis Defendants as follows:

a. The terms of the engagement agreement and Defendants' Outside Counsel Policy apply to the rights, duties and obligations between Plaintiffs and Defendants.

b. Plaintiffs owe no duty to pay, contribute, or indemnify BNY Mellon relating to any alleged losses suffered or attorneys' fees and costs incurred by BNY Mellon in the *Hildene* or *Howe* Actions.

c. Plaintiffs did not cause BNY Mellon to suffer any alleged losses or incur attorneys' fees and costs in the *Howe* or *Hildene* Actions.

d. Plaintiffs properly relied upon the direction and instruction of Defendants, and of their Lead Inside Counsel who was responsible for all substantive and strategic legal decisions.

e. Plaintiffs owe no continuing obligation to BNY Mellon to pay, contribute, or indemnify BNY Mellon for any ongoing or continuing expenses and losses it may suffer in the *Hildene* lawsuit.

f. Plaintiffs have no liability to Defendants with respect to any of Plaintiffs' legal services provided in connection with the PreTSL XX.

## VI.     PRAYER FOR RELIEF

Plaintiffs request that the Court grant the following relief from Defendant in regard to its substantive claims:

i) Actual damages;

ii) All declaratory relief as set forth above;

iii) All reasonable attorneys' fees;

iv) Court costs; and

v) Such other and further relief to which they may be entitled.

Respectfully submitted,

**DOBROWSKI, LARKIN & JOHNSON L.L.P.**


By:    */s/ Paul J. Dobrowski*
       Paul J. Dobrowski
       Texas Bar No. 05927100
       Federal Bar No. 3208
       pjd@doblaw.com
       Danielle N. Andrasek
       Texas Bar No. 24045410
       Federal Bar No. 569877
       dna@doblaw.com
       4601 Washington Avenue, Suite 300
       Houston, Texas 77007
       Telephone:    (713) 659-2900
       Facsimile:    (713) 659-2908

ATTORNEYS FOR PLAINTIFFS
GARDERE WYNNE SEWELL LLP,
STEPHEN DON ELISON AND
ELIZABETH HOWARD CROWELL

10